UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEISHA MULLINAX, individually and on
behalf of her minor child, Z.G.,

              Plaintiff,

-v-

MERLIN ENTERTAINMENTS GROUP
FLORIDA, LLC, d/b/a "LEGOLAND
FLORIDA RESORT", d/b/a "LEGOLAND®
BEACH RETREAT",

              Defendant.

CASE NO.: _____

## COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE AND DECLARATORY RELIEF AND JURY DEMAND

**COME NOW** the Plaintiffs, ALEISHA MULLINAX,  individually and on behalf of her minor child, Z.G., (hereinafter, the "Plaintiffs"), by and through their undersigned counsel, and hereby sues the Defendant, MERLIN ENTERTAINMENTS GROUP FLORIDA, LLC d/b/a LEGOLAND FLORIDA RESORT, d/b/a LEGOLAND® BEACH RETREAT, (hereinafter, the "Defendant" or "Legoland"), and avers as follows:

### INTRODUCTION

1.     This is an action for violations of the Americans with Disabilities Act, as well as for damages that resulted from Defendant's intentional infliction of emotional distress and negligent infliction of emotional distress.

2.     Plaintiff Z.G. suffers from post-traumatic stress symptoms, negative sleep maintenance symptomology, residual trauma, and loss of capacity for the enjoyment of life as a

result of the Defendant's actions.

## JURISDICTION AND VENUE

3.      Plaintiffs' claims for relief are predicated, in part, on Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq., and 42 U.S.C. § 12205 (hereinafter, the "ADA"), which authorizes injunctive relief and the award of attorneys' fees and costs to a prevailing plaintiff in actions brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.

4.      Plaintiffs also seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek preliminary and permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure. This Court has jurisdiction pursuant to 42 U.S.C. § 12101 et. seq. because the instant case arises under federal law, specifically under the American with Disabilities Act as amended, Subchapter III, § 12182. (42 U.S.C. § 12182), and its implementing regulations under 28 C.F.R. § 36.10 I et seq.

5.      Also, the Court has subject matter jurisdiction pursuant to 28 C.S.C. § 1331 for civil actions arising under the laws of the United States; and for actions under laws providing for the protection of civil rights as per 28 U.S.C. § 1343.

6.      On this matter, the Court has supplemental jurisdiction over claims based in Florida State Law as stated in 28 U.S.C. § 1367.

7.      Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) as the Middle District of Florida is the judicial district in which a substantial portion of the events or omissions giving rise to the claims alleged herein occurred.

8.      Venue is also proper in this Court pursuant to 28 U.S.C. § 1332, as the Defendant is a Delaware corporation that also acts as a subsidiary of a foreign corporation headquartered in

Poole, Dorset, England, and the Plaintiff is a resident of Florida.

9.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all triable matters of the instant case.

## PARTIES

10.     The Plaintiff, Aleisha Mullinax (hereinafter, "Ms. Mullinax"), is a natural person residing at 5928 Jasper Glen Drive, Lithia, Hillsborough County, Florida.

11.     The Plaintiff, Z.G. (hereinafter, "Z.G."), is the minor child of Ms. Mullinax, residing at 5928 Jasper Glen Drive, Lithia, Hillsborough County, Florida. Z.G. suffers from a qualifying disability under federal and state law and wears a prosthetic leg in order to walk or swim. At all relevant times to this Complaint, Z.G. was 10 years old.

12.     On information and belief, the Defendant, Merlin Entertainments Group Florida, LLC, d/b/a "Legoland Florida Resort", d/b/a "Legoland® Beach Retreat" is a Delaware limited liability corporation with its offices at One Legoland Way, Winter Haven, Polk County, Florida. Its registered agent is listed as Glenn R. Padgett, P.A. at 1452 N US Highway 1, Ormond Beach, Volusia County, Florida. (The Florida Department of Corporations entries for this entity is attached hereto as **Composite Exhibit "A"**). Legoland is a public accommodation subject to the ADA and at all relevant times engaged in unlawful disability discrimination against the Plaintiffs.

13.     On information and belief, Legoland is a subsidiary of Merlin Entertainments, Ltd., also known as the "Merlin Entertainments Group", a British entity headquartered in Poole, Dorset, England.

## GENERAL ALLEGATIONS

14.     At all times relevant hereto, Defendant Legoland owned, controlled, and/or was exclusively responsible for the maintenance and condition of a public accommodation facility

which is open to the public and known as either "Legoland Florida Resort" and/or "Legoland® Beach Retreat".

15.     The Legoland water park (hereinafter, "Legoland Water Park") is located inside of the Legoland facility, located at One Legoland Way, Winter Haven, Florida 33884.

16.     At all rimes relevant hereto, Defendant Legoland was responsible for ensuring that public accommodations within Legoland Water Park were compliant with the ADA.

17.     On July 16, 2020, Ms. Mullinax visited the Legoland Water Park in Winter Haven, Florida, with her two children aged 5 and 10 years old.

18.     Immediately upon arrival, Ms. Mullinax visited the manager's office to ensure that her son, Plaintiff Z.G., had what was necessary to enjoy the rides at the park.

19.     Ms. Mullinax advised the manager, ("Ryan") that Plaintiff, Z.G., then aged 10, uses a prosthetic right leg below the knee for mobility.

20.     Ms. Mullinax also advised the manager that Z.G. was wearing a water-qualified prosthetic device, or "swimming leg," (hereinafter, the "Device") specifically designed to be used in water and to allow for swimming, and advised him that Z.G. was unable to swim without the device.

21.     The manager also advised Ms. Mullinax that in the event that the Device were to need to be removed, he would be able to put it in his lap or otherwise take it with him on the ride.

22.     Plaintiff Z.G. lined up for a ride at the park with a waterslide using an inner-tube raft.

23.     At all times relevant hereto, there were no warnings, express or otherwise, in print at the location of the ride or stated verbally to Plaintiff Z.G., that would have indicated that this ride required him to remove his prosthetic leg.

24.     Plaintiff Z.G. climbed approximately six flights of stairs to the top of the ride, while Ms. Mullinax waited below with her 5-year-old child, who was not old enough to go on that ride.

25.     Plaintiff Z.G. was then ordered by an employee of the Defendant to remove his leg and to leave it at the top of the slide, in front of the other individuals waiting in line.

26.     Plaintiff Z.G., humiliated and without his mother or any other options, reluctantly complied with the Defendant's employee's demand, and handed him the Device.

27.     Plaintiff Z.G. then went down the slide.

28.     At the bottom of the slide, Z.G. was rendered helpless in the water without any assistance and was helpless in the pool, unable to swim.

29.     Plaintiff Z.G was unable to swim to the steps and was forced to try to swim using only his hands, which was extraordinarily difficult, as without the Device, he loses balance.

30.     Ms. Mullinax called out to Z.G. to come to the steps, initially not realizing that he was without his prosthetic leg.

31.     Z.G. replied, "I can't because I don't have my leg!"

32.     Plaintiff Z.G. was unable to swim and began panicking.

33.     Plaintiff Z.G. was unable to leave the pool.

34.     Ms. Mullinax came to be with her son at the edge of the pool, upon seeing him in distress.

35.     Ms. Mullinax observed that the lifeguards did not appear to realize that there was an emergency, as they had not been notified that a disabled boy was going down the slide.

36.     Furthermore, the lifeguards did not intervene to assist Z.G.

37.     No employees or agents of the Defendants assisted with Z.G. in any way, at any time, in getting Z.G. to safety.

38.     Ms. Mullinax asked an employee of the Defendant to get Z.G.'s leg from the top of the ride, which took approximately twenty minutes, during which time Z.G. and Ms. Mullinax sat on the side of the pool in frustration.

39.     Plaintiff Z.G. asked Legoland employees why he was being treated so unequally and why he was being made a spectacle for everyone else to stare at.

40.     Since the incident, Plaintiff Z.G. has had a recurring nightmare of drowning in the water without his prosthetic leg.

41.     Plaintiff Z.G. has also developed negative sleep maintenance symptomology.

42.     Additionally, Plaintiff Z.G. has displayed elements of post-traumatic stress and residual trauma as a result of the incident at the water park.

43.     As a result, Plaintiff Z.G. has had to undergo treatment at Open Arms Counseling.

44.     Plaintiff Z.G. has since been under the care and treatment of Open Arms Counseling for: (1) recurring nightmares of drowning, (2) negative sleep maintenance symptomology, (3) post-traumatic stress symptoms, and (4) residual trauma.

### COUNT I: Violations of the Americans with Disabilities Act

The Plaintiffs sue Defendant, Merlin Entertainments Group Florida, LLC, d/b/a "Legoland Florida Resort", d/b/a "Legoland® Beach Retreat", and allege:

45.     Plaintiffs incorporates paragraphs 1 through 43 as if fully set forth herein.

46.     Plaintiff Z.G. suffers from a qualifying disability pursuant to the ADA.

47.     Defendant is a place of public accommodation pursuant to the ADA.

48.     Defendant (i) imposed eligibility criteria that tended to screen out I.S.; and (ii) failed to make reasonable modifications in policies, practices, or procedures, which were necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to Z.G.

49.     As such, the Defendant has violated Title III of the ADA by imposing discriminatory eligibility requirements, 42 U.S.C. § 12182(b)(2)(A)(ii); and by failing and refusing to make reasonable modifications in policies, practices, or procedures when such modifications were necessary to allow the Plaintiffs the opportunity to enjoy Legoland Water Park, 42 U.S.C. § 12182(b)(2)(A)(ii).

50.     The Plaintiffs alerted the Defendant, its employees and agents, that Defendant's eligibility criteria and practices for dealing with people using prosthetic devices were discriminatory; Z.G. needed a modification to such criteria; and Z.G.'s need for a modification was obvious.

51.     As such, Defendant, its employees and agents, knew and/or should have known that Defendant's eligibility criteria tended to discriminatorily screen out Z.G. and knew of Z.G.'s need for a reasonable modification to Defendant's eligibility criteria.

52.     The use of non-discriminatory eligibility criteria, or the making of modifications to existing criteria, would not fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation offered by Defendant.

53.     Defendant acknowledged that its agents and employees were authorized to act for Defendant when they committed the ADA violations alleged herein. Defendant's agents and employees accepted the undertaking of acting on behalf of Defendant when they committed the ADA violations alleged herein. Defendant had control over its agents and employees when they committed the ADA violations alleged herein.

54.     The ADA violations alleged herein and committed by Defendant's agents and employees, were done while acting within the course and scope of their employ and/or agency with Defendant. Thus, Defendant is vicariously liable for the actions of its agents and employees

when they committed the ADA violations alleged herein.

55.     A discriminatory purpose, not any legitimate reason, was a motivating factor behind Defendant's aforementioned discriminatory actions and/or omissions.

56.     As a result of Defendant's discriminatory conduct - committed despite being aware and after having been put on notice that its criteria and refusal to modify were discriminatorily impacting the Plaintiffs – the Plaintiffs have suffered, are continuing to suffer, and will in the future suffer irreparable loss and injury and a real and immediate threat of future discrimination by Defendant.

57.     Defendant's unlawful conduct caused the Plaintiffs' damages as described above.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.   assume jurisdiction over this matter;

B.   declare the actions, omissions, policies, and procedures of Defendant complained of herein to be in violation of the Americans with Disabilities Act;

C.   enter a permanent injunction enjoining Defendant, its successors, and its servants, agents and employees, and all those acting in concert with it, from engaging in discrimination based on disability;

D.   enter a permanent injunction compelling Defendant, its successors, and their servants, agents and employees, to adopt policies, procedures and practices which will ensure that they refrain from discrimination based on disability;

E.   enter a permanent injunction compelling Defendant, its successors, and their servants, agents and employees, to participate in disability discrimination training;

F.   award the Plaintiffs their costs and reasonable attorneys' fees in this action;

G.   award the Plaintiffs such other and further relief as the Court deems just and proper.

## <u>COUNT II: Intentional Infliction of Emotional Distress</u>

The Plaintiffs sue Defendant, Merlin Entertainments Group Florida, LLC, d/b/a "Legoland Florida Resort", d/b/a "Legoland® Beach Retreat", and allege:

58.     Plaintiffs incorporate paragraphs 1 through 43 as if fully set forth herein.

59.     The actions of Defendant's agents and employees were done while acting within the course and scope of their employ and/or agency with Defendant, and the Defendant is therefore vicariously liable for their actions.

60.     At all times relevant hereto, the Defendant, its employees, and agents knew and/or should have known that Plaintiff Z.G. would be rendered helpless if he went on a slide that ended in a pool where he would have to swim, without his swimming leg, and as such would be at risk of drowning.

61.     Plaintiff Z.G., at 10 years of age, was not capable of comprehending the risk to his life that occurred by the Defendant sending him down a slide without his swimming leg.

62.     The demand that Plaintiff Z.G. remove his swimming leg prior to going on the waterslide, given to the Plaintiffs by and through Defendant's agents and employees, was intentional.

63.     Defendant's demand for Plaintiff Z.G. to remove his swimming leg prior to going on the slide was reckless.

64.     Defendant knew or should have known that severe emotional distress would result from their actions in rendering a disabled child immobile and helpless on a waterslide leading into a swimming pool and putting his life at risk.

65.     Defendant's conduct in denying Plaintiff Z.G. his mobility in dangerous conditions and leaving the child helpless without assistance or supervision in the swimming pool constitutes outrageous conduct beyond all bounds of decency.

66.     Defendant's conduct has caused Plaintiff Z.G. severe emotional distress.

67.     Plaintiff Z.G. has had a recurring nightmare of drowning in the water without his prosthetic leg.

68.     Plaintiff Z.G. has developed negative sleep maintenance symptomology.

69.     Plaintiff Z.G. has displayed elements of post-traumatic stress and residual trauma as a result of the incident at the water park.

70.     Since the incident, Plaintiff Z.G. has been under the care and treatment of Open Arms Counseling for: (1) recurring nightmares of drowning, (2) negative sleep maintenance symptomology, (3) post-traumatic stress symptoms, and (4) residual trauma.

71.     All conditions precedent, whether statutory, contractual, or at common law, to the bringing of this action have been performed or have occurred or have been waived or excused.

WHEREFORE, the Plaintiffs demand judgment against Defendant Legoland for compensatory damages, punitive damages, attorney's fees, costs, and expenses of this action.

## **COUNT III: Negligent Infliction of Emotional Distress (Z.G.)**

The Plaintiff, Z.G. sues Defendant, Merlin Entertainments Group Florida, LLC, d/b/a "Legoland Florida Resort", d/b/a "Legoland® Beach Retreat", and allege:

72.     Plaintiff hereby incorporates paragraphs 1 through 43 as if fully set forth herein.

73.     Defendant had a duty to protect Plaintiff against unreasonable risks and to ensure his safety while on the ride and in the pool.

74.     At all times relevant hereto, the Defendant, its employees, and agents knew and/or should have known that Plaintiff Z.G. would be rendered helpless if he went on a slide that ended in a pool where he would have to swim, without his swimming leg, and as such would be at risk of drowning.

75.     Plaintiff Z.G., at 10 years of age, was not capable of comprehending the risk to his life that occurred by the Defendant sending him down a slide without his swimming leg.

76.     Places of amusement where others are invited have a continuous duty to look after

the safety of their patrons. <u>Wells v. Palm Beach Kennel Club</u>, 160 Fla. 502, 504, (1948).

77. Defendant breached this duty and made Z.G. descend a waterslide into a swimming pool without the use of his prosthetic leg.

78. Defendant breached its duty in failing to provide Plaintiff Z.G. with assistance once he had been catapulted into the swimming pool by the waterside and was left unable to swim.

79. Title III of the Americans with Disabilities Act of 1990 ("ADA") prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a).

80. The term "public accommodation" includes amusement parks. 42 U.S.C. § 12181(7)(i).

81. Defendant violated the ADA by making Plaintiff Z.G. descend the waterslide without his prosthetic leg and by failing to provide assistance once he was in the swimming pool unable to swim.

82. The Florida Human Rights Act provides that: that [a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion. Fla. Stat. Ann. § 760.08.

83. The term "[p]ublic accommodations" is defined as "places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments." § 760.02(11), Fla. Stat. (2016). <u>Okposio v. Barry Univ. (Main Campus)</u>, 252 So.

3d 1290, 1291 (Fla. Dist. Ct. App. 2018)

84.    Defendant violated the Florida Human Rights Act by making Plaintiff Z.G. descend the waterslide without his prosthetic leg and by failing to provide assistance once he was in the swimming pool unable to swim.

85.    Defendant's negligence caused physical impact with the water while the child was helpless and unable to swim which resulted in severe emotional distress that is continuing.

86.    Plaintiff Z.G. has had a recurring nightmare of drowning in the water without his prosthetic leg.

87.    Plaintiff Z.G. has developed negative sleep maintenance symptomology.

88.    Plaintiff Z.G. has displayed elements of post-traumatic stress and residual trauma as a result of the incident at the water park.

89.    Since the incident, Plaintiff Z.G. has been under the care and treatment of Open Arms Counseling for: (1) recurring nightmares of drowning, (2) negative sleep maintenance symptomology, (3) post-traumatic stress symptoms, and (4) residual trauma.

90.    All conditions precedent, whether statutory, contractual, or at common law, to the bringing of this action have been performed or have occurred or have been waived or excused.

WHEREFORE, the Plaintiff demands judgment against Defendant Legoland for compensatory damages, punitive damages, attorney's fees, costs, and expenses of this action.

## COUNT IV: Negligent Infliction of Emotional Distress (Ms. Mullinax)

The Plaintiff, Ms. Mullinax sues Defendant, Merlin Entertainments Group Florida, LLC, d/b/a "Legoland Florida Resort", d/b/a "Legoland® Beach Retreat", and allege:

91.    Plaintiff Ms. Mullinax hereby incorporates paragraphs 1 through 43 as if fully set forth herein.

92.     Defendant had a duty to protect Plaintiff Z.G. against unreasonable risks and to ensure his safety while on the ride and in the pool.

93.     At all times relevant hereto, the Defendant, its employees, and agents knew and/or should have known that Plaintiff Z.G. would be rendered helpless if he went on a slide that ended in a pool where he would have to swim, without his swimming leg, and as such would be at risk of drowning.

94.     Plaintiff Z.G., at 10 years of age, was not capable of comprehending the risk to his life that occurred by the Defendant sending him down a slide without his swimming leg.

95.     Places of amusement where others are invited have a continuous duty to look after the safety of their patrons. Wells v. Palm Beach Kennel Club, 160 Fla. 502, 504, (1948).

96.     Defendant breached this duty and made Z.G. descend a waterslide into a swimming pool without the use of his prosthetic leg.

97.     Defendant breached its duty in failing to provide Plaintiff Z.G. with assistance once he had been catapulted into the swimming pool by the waterside and was left unable to swim.

98.     Title III of  the Americans with Disabilities Act of  1990  ("ADA")  prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a).

99.     The term "public accommodation" includes amusement parks. 42 U.S.C. § 12181(7)(i).

100.    Defendant violated the ADA by making Plaintiff Z.G. descend the waterslide without his prosthetic leg and by failing to provide assistance once he was in the swimming pool unable to swim.

101.    The Florida Human Rights Act provides that: that [a]ll persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, national origin, sex, pregnancy, handicap, familial status, or religion. Fla. Stat. Ann. § 760.08.

102.    The term "[p]ublic accommodations" is defined as "places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments." § 760.02(11), Fla. Stat. (2016). Okposio v. Barry Univ. (Main Campus), 252 So. 3d 1290, 1291 (Fla. Dist. Ct. App. 2018)

103.    Defendant violated the Florida Human Rights Act by making Plaintiff Z.G. descend the waterslide without his prosthetic leg and by failing to provide assistance once he was in the swimming pool unable to swim.

104.    Defendant's negligence caused physical impact with the water while the child was helpless and unable to swim which resulted in severe emotional distress that is continuing.

105.    Plaintiff Ms. Mullinax was present during the incident and was involved in frantically yelling for her son to be able to swim to the side of the pool to avoid drowning.

106.    Plaintiff Ms. Mullinax experienced severe emotional distress by seeing her son suffering and helpless and unable to swim.

107.    Plaintiff Ms. Mullinax's emotional distress, caused by this traumatizing incident, was concurrent with the incident and continued afterwards.

108.    Since the incident, Plaintiff Ms. Mullinax has experienced severe emotional distress.

109.    All conditions precedent, whether statutory, contractual, or at common law, to the bringing of this action have been performed or have occurred or have been waived or excused.

WHEREFORE, the Plaintiff Ms. Mullinax demands judgment against Defendant Legoland for compensatory damages, punitive damages, attorney's fees, costs, and expenses of this action.

## COUNT V: Negligence

The Plaintiffs sue Defendant, Merlin Entertainments Group Florida, LLC, d/b/a "Legoland Florida Resort", d/b/a "Legoland® Beach Retreat", and allege:

110.    Plaintiffs hereby incorporate paragraphs 1 through 43 as if fully set forth herein.

111.    Defendant had a duty to protect Plaintiff Z.G. against unreasonable risks and to ensure his safety while on the ride and in the pool, and a duty to Plaintiff Ms. Mullinax to keep her child safe against unreasonable risks and to ensure their safety while on the ride and in the pool.

112.    At all times relevant hereto, the Defendant, its employees, and agents knew and/or should have known that Plaintiff Z.G. would be rendered helpless if he went on a slide that ended in a pool where he would have to swim, without his swimming leg, and as such would be at risk of drowning.

113.    Plaintiff Z.G., at 10 years of age, was not capable of comprehending the risk to his life that occurred by the Defendant sending him down a slide without his swimming leg.

114.    Places of amusement where others are invited have a continuous duty to look after the safety of their patrons. Wells v. Palm Beach Kennel Club, 160 Fla. 502, 504, (1948).

115.    Defendant breached this duty and made Z.G. descend a waterslide into a swimming pool without the use of his prosthetic leg.

116.    Defendant breached its duty in failing to provide Plaintiff Z.G. with assistance once he had been catapulted into the swimming pool by the waterside and was left unable to swim.

117.   Defendant's negligence caused physical impact with the water while the child was helpless and unable to swim which resulted in severe emotional distress that is continuing.

118.   Plaintiff Ms. Mullinax was present during the incident and was involved in frantically yelling for her son to be able to swim to the side of the pool to avoid drowning.

119.   Plaintiff Ms. Mullinax experienced severe emotional distress by seeing her son suffering and helpless and unable to swim.

120.   Plaintiff Ms. Mullinax's emotional distress, caused by this traumatizing incident, was concurrent with the incident and continued afterwards.

121.   Since the incident, Plaintiff Ms. Mullinax has experienced severe emotional distress.

122.   Plaintiff Z.G. has had a recurring nightmare of drowning in the water without his prosthetic leg.

123.   Plaintiff Z.G. has developed negative sleep maintenance symptomology.

124.   Plaintiff Z.G. has displayed elements of post-traumatic stress and residual trauma as a result of the incident at the water park.

125.   Since the incident, Plaintiff Z.G. has been under the care and treatment of Open Arms Counseling for: (1) recurring nightmares of drowning, (2) negative sleep maintenance symptomology, (3) post-traumatic stress symptoms, and (4) residual trauma.

126.   Plaintiffs' injuries are legally and proximately caused by Defendant's negligence.

127.   Plaintiffs have suffered emotional injuries which have required medical attention and therapy.

128.   As a result, the Plaintiffs have suffered monetary damages for the Defendant's breach of its duty to the Plaintiffs.

129.    All conditions precedent, whether statutory, contractual, or at common law, to the bringing of this action have been performed or have occurred or have been waived or excused.

WHEREFORE, the Plaintiffs demand judgment against Defendant Legoland for compensatory damages, punitive damages, attorney's fees, costs, and expenses of this action.

## DEMAND FOR JURY TRIAL

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

Dated: <u>11/24/2020</u>

_____
ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
**LENTO LAW GROUP, P.A.**
222 San Marco Ave., Ste."C"
St. Augustine, FL 32084
904.602.9400 x 467 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiffs*

# COMPOSITE EXHIBIT "A"

DIVISION OF CORPORATIONS



[Previous on List](#)　|　[Next on List](#)　|　[Return to List](#)

**No Filing History**

Fictitious Name Search

Submit

# Fictitious Name Detail

### Fictitious Name

LEGOLAND FLORIDA RESORT

### Filing Information

| | |
|---|---|
| **Registration Number** | G20000058158 |
| **Status** | ACTIVE |
| **Filed Date** | 05/26/2020 |
| **Expiration Date** | 12/31/2025 |
| **Current Owners** | 1 |
| **County** | POLK |
| **Total Pages** | 1 |
| **Events Filed** | NONE |
| **FEI/EIN Number** | 26-4179448 |

### Mailing Address

1 LEGOLAND WAY
WINTER HAVEN, FL 33884

### Owner Information

MERLIN ENTERTAINMENTS GROUP FLORIDA LLC
1 LEGOLAND WAY
WINTER HAVEN, FL 33884
**FEI/EIN Number:** 26-4179448
**Document Number:** M10000000047

### Document Images

[05/26/2020 -- Fictitious Name Filing](#)　　View image in PDF format

[Previous on List](#)　|　[Next on List](#)　|　[Return to List](#)

**No Filing History**

Fictitious Name Search

Submit

12/2/2020　Case 8:20-cv-02834-VMC-CPT　Document 1 Filed 12/02/20 Page 20 of 22 PageID 20
Sunbiz.org - Florida Department of State

DIVISION OF CORPORATIONS



[Previous on List](#)　[Next on List](#)　[Return to List](#)

[Filing History](#)

```
Fictitious Name Search
```
Submit

# Fictitious Name Detail

### Fictitious Name

LEGOLAND® BEACH RETREAT

### Filing Information

| | |
|---|---|
| **Registration Number** | G16000128502 |
| **Status** | ACTIVE |
| **Filed Date** | 11/30/2016 |
| **Expiration Date** | 12/31/2021 |
| **Current Owners** | 1 |
| **County** | POLK |
| **Total Pages** | 2 |
| **Events Filed** | 1 |
| **FEI/EIN Number** | 26-4179448 |

### Mailing Address

100 LEGOLAND WAY
WINTER HAVEN, FL 33884

### Owner Information

MERLIN ENTERTAINMENTS GROUP FLORIDA, LLC
1 LEGOLAND WAY
WINTER HAVEN, FL 33884
**FEI/EIN Number:** 26-4179448
**Document Number:** M10000000047

### Document Images

[11/30/2016 -- Fictitious Name Filing](#)　View image in PDF format

[02/21/2017 -- CHANGE NAME/ADDRESS](#)　View image in PDF format

---

[Previous on List](#)　[Next on List](#)　[Return to List](#)

[Filing History](#)

```
Fictitious Name Search
```
Submit



# Detail by Entity Name

Foreign Limited Liability Company
MERLIN ENTERTAINMENTS GROUP FLORIDA LLC

**Filing Information**

| | |
|---|---|
| **Document Number** | M10000000047 |
| **FEI/EIN Number** | 26-4179448 |
| **Date Filed** | 01/05/2010 |
| **State** | DE |
| **Status** | ACTIVE |
| **Last Event** | LC STMNT OF RA/RO CHG |
| **Event Date Filed** | 08/11/2017 |
| **Event Effective Date** | NONE |

**Principal Address**

ONE LEGOLAND WAY
WINTER HAVEN, FL 33884

Changed: 03/29/2012

**Mailing Address**

ONE LEGOLAND WAY
WINTER HAVEN, FL 33884

Changed: 04/21/2011

**Registered Agent Name & Address**

GLENN R PADGETT, P.A.
1452 N US HWY 1
ORMOND BEACH, FL 32174

Name Changed: 10/15/2012

Address Changed: 08/11/2017

**Authorized Person(s) Detail**

**Name & Address**

Title Manager

JONES, ADRIAN
ONE LEGOLAND WAY
WINTER HAVEN, FL 33884

Title Manager

Davies, Jason
ONE LEGOLAND WAY
WINTER HAVEN, FL 33884

Title Manager

Jackson, Rex T
ONE LEGOLAND WAY
WINTER HAVEN, FL 33884

### Annual Reports

| Report Year | Filed Date |
|---|---|
| 2018 | 03/20/2018 |
| 2019 | 04/04/2019 |
| 2020 | 03/17/2020 |

### Document Images

| | |
|---|---|
| 03/17/2020 -- ANNUAL REPORT | View image in PDF format |
| 04/04/2019 -- ANNUAL REPORT | View image in PDF format |
| 03/20/2018 -- ANNUAL REPORT | View image in PDF format |
| 08/11/2017 -- CORLCRACHG | View image in PDF format |
| 05/01/2017 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2016 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2015 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2014 -- ANNUAL REPORT | View image in PDF format |
| 01/13/2014 -- CORLCRACHG | View image in PDF format |
| 03/22/2013 -- ANNUAL REPORT | View image in PDF format |
| 10/15/2012 -- Reg. Agent Change | View image in PDF format |
| 03/29/2012 -- ANNUAL REPORT | View image in PDF format |
| 03/26/2012 -- LC Amendment | View image in PDF format |
| 11/09/2011 -- LC Amendment | View image in PDF format |
| 04/21/2011 -- ANNUAL REPORT | View image in PDF format |
| 11/23/2010 -- FEI | View image in PDF format |
| 11/23/2010 -- LC Amendment | View image in PDF format |
| 02/04/2010 -- LC Article of Correction | View image in PDF format |
| 01/05/2010 -- Foreign Limited | View image in PDF format |

Florida Department of State, Division of Corporations